**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ROBIN MECEY and<br>DAVID MECEY,       ) | |
|                 ) | |
|      **Plaintiffs,**     ) | |
|                 ) | |
| V.                  ) | Case No. 4:17CV1653JCH |
|                 ) | |
| CITY OF FARMINGTON, et al.,   ) | |
|                 ) | |
|      **Defendants.**    ) | |

## MEMORANDUM AND ORDER

Before the Court is the Motion to Dismiss, For More Definite Statement, and/or to Strike Plaintiffs' First Amended Complaint filed by Defendants J.C. Penny Corporation, Inc., and Victoria Bollman. (ECF 25). The Motion is fully briefed and ready for disposition.

## FACTUAL BAGROUND

Plaintiffs Robin Mecey and David Mecey filed their pro se Complaint on June 12, 2017. (ECF 1). Defendant J.C. Penny Corporation, Inc., (J.C. Penny) and Defendant Victoria Bollman (Bollman) each filed a Motion to Dismiss, For More Definite Statement and/or to Strike (ECF 10; ECF 17) and Defendant Edward Pultz filed a Motion to Dismiss, or in the Alternative, for More Definite Statement and to Strike (ECF 18).

Prior to ruling on the aforementioned Motions, the Court granted Plaintiffs leave to file an amended complaint. (ECF 22). On September 1, 2017, Plaintiffs filed a First Amended Complaint. (ECF 23). In its first paragraph, titled "Jurisdictional Statement," the fourteen page First Amended Complaint states that Plaintiffs are bringing their claims against "a municipality, it's [sic] officers and individuals acting under color of law" and that they are challenging "the constitutionality of their acts." (ECF 23, ¶ 1). In its fourth paragraph, the First Amended Complaint states that, for purposes of Plaintiffs' claims, J.C. Penney and Bollman "were acting under color of law RSMO 537.125[1] and in concert with the City of Farmington and it's [sic] representatives." (ECF 23, ¶ 4).

---

[1] Mo. Rev. Stat. § 537.125, titled "Shoplifting – detention of suspect by merchant – liability presumption," provides:

> 2. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money. Any such reasonable detention shall not constitute an unlawful arrest or detention, nor shall it render the merchant, his agent or employee, criminally or civilly liable to the person so detained.

> 3. Any person willfully concealing unpurchased merchandise of any mercantile establishment, either on the premises or outside the premises of such establishment, shall be presumed to have so concealed such merchandise with the intention of committing a wrongful taking of such merchandise within the meaning of

In a fifth paragraph, titled "Nature of the Case," Plaintiffs state that Loss Prevention Agent Summer Taylor was sent to the J.C. Penny store in Farmington, Missouri, where Robin Mecey worked, and that Taylor was to investigate alleged shortages in cash registers throughout the store. This paragraph further states that "Robin Mecey was singled out with no probable cause," "lured into the back room of the store under false pretenses," and "held against her will for over 2 hour[s] being forced to write a confession for the loss prevention agent concerning events she knew nothing about as a condition of her release." The fifth paragraph also states that Robin Mecey "witnessed the [loss prevention agent] and her coworker fabricate evidence to make up their story." (ECF 23, ¶ 5).

---

subsection 1, and the finding of such unpurchased merchandise concealed upon the person or among the belongings of such person shall be evidence of reasonable grounds and probable cause for the detention in a reasonable manner and for a reasonable length of time, of such person by a merchant, his agent or employee, in order that recovery of such merchandise may be effected, and any such reasonable detention shall not be deemed to be unlawful, nor render such merchant, his agent or employee criminally or civilly liable.

4. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed a wrongful taking of property, as defined in this section, and who has detained such person and investigated such wrongful taking, may contact law enforcement officers and instigate criminal proceedings against such person. Any such contact of law enforcement authorities or instigation of a judicial proceeding shall not constitute malicious prosecution, nor shall it render the merchant, his agent or employee criminally or civilly liable to the person so detained or against whom proceedings are instigated.

In a sixth paragraph, under a heading titled "Causes of [A]ction," Plaintiffs' First Amended Complaint states that, on March 24, 2014, after Robin Mecey "was lured from her work station under false pretenses into a back room of the store . . . where loss prevention agent Summer Taylor . . . was waiting, Robin Mecey was then held and terrorized for over 2 hours by the women against her will." This paragraph continues to state that Taylor "instill[ed] fear" in Robin Mecey; that Robin Mecey "was then forced to participate . . . in falsifying evidence, fabricating a story, falsifying amounts of shortages and making up circumstances to write on the confession, in order for [] Taylor . . . 'to close th[e] investigation so she could get home'"; that "Robin Mecey was then coerced into writing and signing [a] fabricated confession as a promise and condition of her release"; that the "restraint committed in concert with store manager [] Bollman . . . [was] noted in the Farmington Police Department . . . 'police report'"; that "Robin Mecey was never accused or suspected of having anything on her person or within her belongings that belonged to [] J.C. Penny [] before or during the detention to justify the restraint"; that no items were recovered; that "there was no crime in progress to justify such acts"; that "Robin Mecey was restrained by the J.C. Penny staff an additional one half hour after she signed the forced, fabricated confession before police were called"; that "Robin Mecey had [a] reasonable expectation to be protected from such irresponsible, unlawful and malicious acts and to be able to

engage in her contractual agreements and peacefully enjoy the fruits of her labor without being singled out by [] Loss Prevention agents with personal agendas and police powers acting in the name of the State"; and that Bollman and J.C. Penney "knew or should have known that such acts are criminal and violated Robin Mecey's 4th, 5th, 6th, 8th and 14th amendment rights under the guise of RSMo. 537.125." (ECF 23, ¶ 6).

In the seventh paragraph of the First Amended Complaint, Plaintiffs state that, on March 24, 2014, Robin Mecey was released to the custody of the Farmington Police Department; that she was charged with misdemeanors, "without a warrant, without probable cause, without exigent circumstances that involved her and without any recovered items that belonged to J.C. Penny upon her person or within her possessions"; and that she was imprisoned "at the St. Francois County Jail in violation of [the] 4th, 5th and 14th Amendments." (ECF 23, ¶ 7).

In paragraphs eight through ten of the First Amended Complaint, Plaintiffs further allege that, on March 24 and 25, 2014, both Robin and David Mecey were "separately refused to file complaints concerning the kidnapping, assault and false arrest of Robin Mecey" by the Farmington Police Department; that, on April 4, 2014, Bollman went to the Farmington Police Department, at its request, and, with "Missouri State notary Teresa Bohn," "created a misleading affidavit against Robin Mecey in an act to continue the fraudulent prosecution against Robin Mecey and to

fraud judicial process [sic]"; that "the Affidavit was misleading [due] to the fact it done nothing more than explain Robin Mecey[']s duties she was hired to perform which was to take money out as well as put money into the cash drawers at J.C. Penney as they attempted to word it in a way to sound suspicious"; and that Teresa Bohn "conspire[ed]" with Bollman "on the exact wording" of the affidavit. (ECF 23, ¶¶ 8-10).

In subsequent paragraphs, Plaintiffs' First Amended Complaint provides a narrative of what allegedly took place in regard to the prosecution of Robin Mecey for misdemeanors related to the March 24, 2014 incident at J.C. Penney, as described above, and states that she was "found guilty on all charges." (ECF 23, ¶¶ 11-13). Additionally, paragraph fifteen of the First Amended Complaint states that, on January 27, 2015, Robin and David Mecey "again tried to file a police report" at the Farmington Police Department, against persons other than Bollman or J.C. Penney for false police reports and felonious restraint and against Bollman for "signing a false affidavit against Robin Mecey." (ECF 23, ¶ 15).

Paragraph sixteen of the First Amended Complaint states that various persons, other than J.C. Penney or Bollman, "are accused of entering into a conspiracy to commit judicial fraud to get Robin Mecey's Trial Denovo dismissed in order for [the prosecutor] to steal the case and silence Robin and David Mecey

and to conceal the kidnaping class A felony crime along with the false police reports." (ECF 23, ¶ 16).

The First Amended Complaint further alleges that, on March 24, 2015, David Mecey made contact with the City of Farmington Administrator to complain regarding the conduct of persons other than Bollman or J.C. Penney; that the prosecutor covered up misconduct on the part of the City of Farmington Police Department for "false arrest," "perjury," and "crimes committed against Robin Mecey from the staff at [] J.C. Penney"; that Plaintiffs' complaints to the City of Farmington Police Department regarding the conduct of J.C. Penney and its staff were true; and that, as a result of the charges against her, Robin Mecey was forced to pay fines and court costs for her "original bench trial." (ECF 23, ¶¶ 19, 20, 23-24).

As for "Damages," Plaintiffs state that they "suffered expenses of over 36 months of judicial abuse with over 1500 miles traveled and the time to respond pro se with dozens of motions answers and briefs"; that Robin Mecey has suffered "mental anguish," "IBS," and nightmares from the aforementioned events; that Robin Mecey "has had her[] 4th 5th 6th 8th and 14th amendment[] [rights] violated multiple times by the actions of the defendants and has been criminally violated"; and that Robin Mecey had to pay a fine and court costs for the "De Novo trial that she was denied." (ECF 23, ¶ 25). For "Relief," Plaintiffs seek "to get the

conflicting policies and the malice for rule of law in the acts of the City of Farmington in treating complainants as adversaries changed," plus "damages for time, co[]st and reputation," including a refund for fines and fees paid to the Farmington Municipal Court. (ECF 23, ¶ 26).

In their pending Motion to Dismiss, Defendants J.C. Penny and Bollman contend that Plaintiff David Mecey fails to state a claim against them; that Plaintiffs' claims are barred by Missouri's two-year statute of limitations, Mo. Rev. Stat. § 516.140; that, to the extent Plaintiffs make a claim against J.C. Penney and Bollman for malicious prosecution, they have failed to plead the condition precedent which is that Robin Mecey was successful in the underlying prosecution; and that, because "the only clear claims of Plaintiffs against Defendants J.C. Penney and Bollman are barred, as set forth above, their entire case against said Defendants should be dismissed." Defendants J.C. Penney and Bollman alternatively argue that the Court should strike Plaintiffs' First Amended Complaint because it includes "tangential and irrelevant materials without clarifying the claims being made against each of the 15 different [D]efendants," and that Plaintiffs "should be ordered to provide a clear recitation of their claims against each party." (ECF 25).

# LEGAL STANDARDs

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations are to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Federal Rule of Civil Procedure 10(b) provides that in his or her complaint:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

When a claim is so "vague or ambiguous that [a] party cannot reasonably prepare a response" a party can move for a more definite statement. Fed. R. Civ. P. 12(e). Also, a court may strike, either pursuant to the motion of a party or on its own, "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show that "'the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Twombly,* 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft,* 556 U.S. at 679 (*citing Twombly,* 550 U.S. at 556). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555).

Further, in regard to a Rule 12(b)(6) Motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure ' 1216, pp. 235-236 (3d ed. 2004).

*Twombly,* 550 U.S. at 555. *See also Gregory v. Dillard=s, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right.'") (*quoting Stalley v. Catholic Health Initiative,* 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556 (citation omitted). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his or her] claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*abrogated on other grounds, Horlow v. Fitzgerald,* 457 U.S. 800 (1982)).

A pro se complaint should be liberally construed. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *See also Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995) (holding that in civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss). The complaint must, however, "still allege sufficient facts to support the claims advanced." *Stone,* 364 F.3d at 914 (*citing Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."); *Cunningham v. Ray,* 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). With these principles in mind, the Court will consider J.C. Penney and Bollman's Motion to Dismiss, For More Definite Statement, and/or to Strike Plaintiffs' First Amended Complaint.

# PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE PENDING MOTION

In their Memorandum in Response to the pending Motion, Plaintiffs "object" to Bollman's "being joined to the motion due to the fact [that] she did not file any pleadings within the described time to answer the complaint." (ECF 30 at 1). In support of this position, Plaintiffs state that that the Motion under consideration is Bollman's "first action" since she was served and that, therefore, Plaintiffs were "reserve[ing] their right . . . to file for default judgment." (ECF 30 at 2).

First, as argued by Defendants J.C. Penney and Bollman in their Reply (ECF 31 at 1-2), Fed. R. Civ. P. 4(e)(1)-(2) provides that service of summons on an individual may be made either by following the law of the state for serving a summons where service is made or the action is pending, by delivering a copy the summons and complaint to the individual personally, by leaving a copy of the summons and complaint at the individual's dwelling "with someone of a suitable age and discretion who resides there," or by "delivering a copy of each to" the individual's authorized agent. Missouri law provides that service on a person may be made by personal delivery, leaving a copy at the individual's dwelling with a family member over the age of 15, or by delivering a copy to an agent authorized by appointment or required by law to receive service. Mo. Rev. Stat. § 54.13(b).

The "proof of service," submitted by Plaintiffs in support of their position, reflects that Plaintiffs attempted to serve Bollman on June 21, 2017, by delivery of

the summons and Complaint to a "manager" named "Tori." (ECF 30 at 7). In a sworn affidavit, however, Bollman states that she has never given "Tori Ladel," a co-worker, authority to accept service on her behalf. (ECF 31.1, ¶ 2).

Bollman also states in her affidavit that, on July 10, 2017, she did receive a summons addressed to her along with a copy of the Complaint by personal delivery, at the J.C. Penney store. (ECF 31.1, ¶ 3). Upon being served, Bollman filed a timely response, on July 31, 2017. (ECF 17).[2] *See* Fed. R. Civ. P. 12(a). Thus, Plaintiffs incorrectly contend that Bollman never filed a timely response to their Complaint. In any case, Plaintiffs' filing the First Amended Complaint precludes the entry of default on their prior Complaint. *Thomas v. United Steelworkers Local 1938,* 743 F.3d 1134, 1139 (8th Cir. 2014) ("When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect.") (citation omitted).

Moreover, after Plaintiffs filed the First Amended Complaint, on September 1, 2017, Bollman timely filed a responsive pleading, in the form of the pending Motion. (ECF 23; ECF 25). *See* Fed. R. Civ. P. 12(a). Thus, to the extent Plaintiffs suggest Bollman is in default, they are mistaken.

---

[2] On July 31, 2017, Defendant Victoria Bollman filed a Motion to Dismiss, for More Definite Statement and/or to Strike. (ECF 17). The docket sheet incorrectly states that this Motion was filed on behalf of Defendant J.C. Penney.

For the foregoing reasons, the Court finds without merit Plaintiffs' "objection" to Bollman's filing the pending Motion to Dismiss, For More Definite Statement, and/or to Strike Plaintiffs' First Amended Complaint.

## DISCUSSION

Plaintiffs' First Amended Complaint is unclear as to the nature of the allegations they intend to make against Defendants J.C. Penney and Bollman. The Court agrees with Defendants J.C. Penney and Bollman, that the rambling narrative of the First Amended Complaint can, however, be read to suggest that Plaintiffs allege false imprisonment, malicious prosecution, assault, and giving a false statement to police against J.C. Penney and Bollman. Notably, in their Response, Plaintiffs do not deny that they make these claims in the First Amended Complaint, although they also suggest that their cause of action is based on fraud and contract violations and violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985. (ECF 30).

### A. Statute of Limitations:

In their pending Motion, Defendants J.C. Penney and Bollman argue that Plaintiffs' Complaint was filed after the expiration of the two-year statute of limitations applicable to claims for "slander, injurious falsehood, assault, battery, false imprisonment, criminal conversation, [and] malicious prosecution," Mo. Rev. Stat. § 516.140, and that, therefore, Plaintiffs' cause of action should be dismissed.

In their Response to this statute of limitations argument, Plaintiffs state that all Defendants, including J.C. Penney and Bollinger, committed "judicial fraud," in that they "worked in concert to conceal [the] very acts to which J.C. Penney and Victoria Bollinger have [] confessed within their motion that they carried out a felonious act on 03/24/2014." Plaintiffs further state that they "have exhausted all possible remedies within reason to expose these [] acts," and that actions based on fraud and contract are subject to a five-year statute of limitations. (ECF 30 at 4). Thus, Plaintiffs argue that their claims are based on contract and fraud, and that, therefore, they are subject to the five-year statute of limitations of Mo. Rev. Stat. § 516.120.

As a preliminary matter, the Court notes that Plaintiffs' Complaint is determinative of whether their cause of action was timely filed. *Bailey v. Innovative Mgmt, Servs. & Inv., Inc.,* 890 S.W.2d 648, 650 (Mo. 1994) (en banc). To the extent the First Amended Complaint added to or changed the nature of Plaintiffs' claims, the critical issue is whether Plaintiffs' cause of action was "so changed by [the First Amended Complaint] that it is a different cause of action." *Id*.

As suggested by Defendants J.C. Penney and Bollman, to the extent Plaintiffs allege false imprisonment, malicious prosecution, assault, and giving a false statement to the police, the two-year statute of limitations of Mo. Rev. Stat. §

516.140 is applicable. (ECF 26 at 4; ECF 31 at 5). Liberally construing Plaintiffs' original Complaint, in its entirety, Plaintiffs allege that any actionable conduct on the part of Defendants J.C. Penney and Bollman took place on March 24, 2014, April 4, 2014, January 27, 2015, and March 25, 2015. Notably, the First Amended Complaint also alleges conduct on the part of Defendants J.C. Penney and/or Bollman on these dates. Plaintiffs' Complaint was filed on June 12, 2017, well in excess of the two-year statute of limitations applicable to any claims they make for false imprisonment, malicious prosecution, assault, and giving a false statement to police. As such, the Court finds, to the extent Plaintiffs allege false imprisonment, malicious prosecution, assault, and/or giving a false statement to the police on the part of Defendants J.C. Penney and Bollman, that Plaintiffs' cause of action against Defendants J.C. Penney and Bollman should be dismissed as untimely.

As stated above, however, Plaintiffs argue that they have alleged a contractual violation and fraud against Defendants J.C. Penney and Bollman, and that their Complaint was timely filed in accordance with Mo. Rev. Stat. § 516.120. (ECF 30 at 4). "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Braughton v. Esurance Ins. Co.,* 466 S.W.3d 1, 8 (Mo. Ct. App. 2015). Indeed, Mo. Rev. Stat. § 516.120(1)

does provide for a five-year statute of limitations for some causes of action based on contract. Plaintiffs' Complaint, however, filed on June 12, 2017, only mentions a contract, to the extent it states that, on March 25, 2014, when the incident giving rise to this action arose, Robin Mecey had an "arbitration contract" with J.C. Penney. (ECF 1, ¶ 4.1). The Complaint makes no other references to this "arbitration contract." In particular, it does not describe the terms of the alleged arbitration contract and does not allege that Robin Mecey performed her obligations under the alleged arbitration contract.

Although the First Amended Complaint asserts that Robin Mecey had a right to engage in "her contractual agreements," and that the conduct of J.C. Penney and Bollman interfered with that right, the First Amended Complaint fails to describe the nature of any contract Robin Mecey had, including with whom she had the contract, its purpose, or its terms. (ECF 23, ¶ 6). Thus, liberally construing Plaintiffs' Complaint, and even their First Amended Complaint, the Court finds that Plaintiffs have not sufficiently alleged breach of contract against Defendants J.C. Penney and Bollman. *See Stone*, 364 F.3d at 914; *Braughton,* 466 S.W.3d at 8. As such, the Court finds that, because Plaintiffs have failed to allege a cause of action for breach of contract, their argument that the five-year statute of limitations of Mo. Rev. Stat. § 516.120 is applicable to their cause of action is without merit.

As for fraud, Mo. Rev. Stat. § 516.120(5) provides for a five-year statute of limitations for some causes of action based on fraud.[3]  The elements of fraud include:

> (1) a representation; (2) its *falsity*; (3) its materiality; (4) the speaker's *knowledge of its falsity* or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's *ignorance of the falsity* of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Stander v. Szabados,* 407 S.W.3d 73, 81 (Mo. Ct. App. 2013) (emphasis added).

*See also Minor v. Terry,* 475 S.W.3d 124, 136 (Mo. Ct. App. 2014) (falsity is an element of fraudulent misrepresentation) (*citing Prof'l Laundry Mgmt. Sys., Inc. v. Aquatic Techs., Inc.,* 109 S.W.3d 200, 205 (Mo. Ct. App. 2003)).

Plaintiffs acknowledge, in the Complaint (ECF 1, ¶ 4.6) and in the First Amended Complaint (ECF 23, ¶ 12), that Robin Mecey was convicted of all charges against her.  Given that the Complaint and First Amended Complaint belie the required element of falsity for a fraud claim, the Court finds that Plaintiffs have not sufficiently alleged a cause of action for fraud.  *See Stone,* 364 F.3d at 912; *Minor,* 475 S.W.3d at 136; *Stander,* 407 S.W.3d at 81.  The Court, therefore, finds

---

[3] Mo. Rev. Stat. § 516.120(5) provides an exception to the five-year limitation for actions based on fraud in that it gives a person up to ten years to discover the fraud. Nonetheless, "all claims for fraud must be brought within a maximum of 15 years." *Ellison v. Fry*, 437 S.W.3d 762, 769-71 (Mo. 2014) (en banc).

without merit Plaintiffs' argument that the five-year statute of limitations of Mo. Rev. Stat. § 516.120(5) is applicable to their cause of action.

Plaintiffs also argue that any statute of limitations should be tolled because Defendant Summer Taylor, J.C. Penney's loss prevention agent, concealed herself out of state and because they unsuccessfully tried to serve her to testify in Robin Mecey's criminal trial, and that Defendants J.C. Penney and/or Bollman somehow played a role in Taylor's concealing herself and Plaintiffs' being unable to serve her. (ECF 30 at 5). Missouri law, in particular Mo. Rev. Stat. § 516.280, does state that "[i]f any person, by absconding or concealing himself, or by any other improper act, prevents the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

As argued by Defendants J.C. Penney and Bollman, however, the concealment which is the subject of Mo. Rev. Stat. § 516.280 refers to concealment of "the fact that the plaintiff has a claim against the defendant." *State ex rel. Heart of America Council v. McKenzie*, 484 S.W.3d 320, 325 (Mo. 2016) (en banc). For Mo. Rev. Stat. § 516.280 to apply, a plaintiff must allege conduct by the defendant that "hindered or delayed his commencement of [the] action until after the expiration of the statutes of limitations." *Id.* "Fraudulent concealment is inapplicable if a plaintiff knows or should have known he had a cause of action."

*Id.* (*quoting M & D Enterprises, Inc. v. Wolff,* 923 S.W.2d 389, 400 (Mo. Ct. App. 1996)). Notably, Plaintiffs Complaint and First Amended Complaint reflect that Plaintiffs were aware of the conduct of J.C. Penney and Bollman which gave rise to Plaintiffs' cause of action prior to the expiration of the applicable to-year statute of limitations. Plaintiffs, moreover, have failed to allege any facts suggesting conduct on the part of Defendants J.C. Penney or Bollman which hindered or delayed Plaintiffs' ability to commence this action.

Also, in their Response to the pending Motion, Plaintiffs suggest that "judicial fraud" should excuse their filing the Complaint after the statute of limitations expired or that it somehow tolled the statute of limitations. Plaintiffs argue that all Defendants, including J.C. Penney and Bollinger committed "judicial fraud," in that they "worked in concert to conceal [the] very acts to which J.C. Penney and Victoria Bollinger have [] confessed." (ECF 30 at 4). Plaintiffs describe "Judicial Fraud" as "stating the same court the defendants are siting is the very court accused of the acts within the complaint along and in concert with the defendant." (ECF 30 at 6).

In their Reply, J.C. Penney and Bollman argue that Plaintiffs' claim of "judicial fraud," in effect, contests the validity of Robin Mecey's conviction; that by asserting this claim Plaintiffs are asking the Court to re-adjudicate the merits of Robin Mecey's criminal case; and that, for this Court to do so, would be a violation

of the Rooker-Feldman Doctrine. (ECF 31 at 6). Notably, the Rooker-Feldman Doctrine provides that federal courts do not have jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court" judgments rendered before the federal district court proceedings commenced and inviting the district court to review and reject those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284-88 (2005). The Court agrees with Defendants J.C. Penney and Bollman and finds that Plaintiffs are barred from re-adjudicating the validity of Robin Mecey's conviction for the events of March 24, 2014, at the J.C. Penney store in Farmington. Under such circumstances, the judicial fraud alleged by Plaintiffs did not toll the statute of limitations and does not excuse their filing of the Complaint after the statute of limitations expired.

To the extent Plaintiffs cite Mo. Rev. Stat. § 556.036 for their argument that a three-year statute of limitations applies (ECF 30 at 5), Mo. Rev. Stat. § 556.036 establishes the statute of limitations for certain criminal offenses, and, therefore, is not applicable in the instant civil litigation.

In conclusion, regarding J.C. Penney's and Bollman's statute of limitations argument, the Court finds that all arguments Plaintiffs make in response are without merit; that Plaintiffs untimely filed their Complaint; and that, therefore, Plaintiffs' claims against Defendants J.C. Penney and Bollman for false

imprisonment, malicious prosecution, assault, and giving a false statement to the police should be dismissed.

**B. Malicious Prosecution:**

As stated above, Plaintiffs allege malicious prosecution against Defendants J.C. Penney and Bollman. The Court has found that Plaintiffs' claim for malicious prosecution against Defendants J.C. Penney and Bollman is time-barred. Nonetheless, the Court will, alternatively, consider the argument of Defendants J.C. Penney and Bollman that Plaintiffs' claim for malicious prosecution should be dismissed because Plaintiffs have failed to allege a "termination of the proceedings," which is a condition precedent to a claim for malicious prosecution. (ECF 26 at 4).

The elements of a cause of action for malicious prosecution include:

(1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation or instigation by the present defendant; (3) *its termination in favor of the present plaintiff*; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof.

*Stafford v. Muster,* 582 S.W.2d 670, 675 (Mo. 1979) (en banc) (emphasis added) (*citing Huffstutler v. Coates*, 335 S.W.2d 70, 73 (Mo. 1960); *McFarland v. Union Fin. Co.,* 471 S.W.2d 497, 499 (Mo. Ct. App. 1971)).

Clearly, Plaintiffs First Amended Complaint states that Plaintiff Robin Mecey was found guilty of the charges against her resulting from the March 24,

2014 incident at the J.C. Penney store in Farmington, Missouri, and that her attempt to have her conviction overturned was unsuccessful. As such, Plaintiffs fail to allege the third element of a cause of action for malicious prosecution – that the proceedings were terminated in favor of Robin Mecey. *See Stafford,* 582 S.W.2d at 675.

In response to J.C. Penney's and Bollman's arguing that Plaintiffs' claim for malicious prosecution should be dismissed because Plaintiffs have not alleged that Robin Mecey was successful in the underlying prosecution, Plaintiffs' state, without further explanation that, "[i]t seems immaterial to the plaintiffs to address the issue further than this statement except the fact that title 42 1983 and 1985 where [sic] made to address these very acts within the plaintiffs' complaint." (ECF 30, ¶ 5). Thus, Plaintiffs argue that, somehow, 42 U.S.C. § 1983 and § 1985 make it irrelevant to Plaintiffs' claims against J.C. Penney and Bollinger for malicious prosecution that Robin Mecey was unsuccessful in her underlying prosecution.

To the extent Plaintiffs' argue that 42 U.S.C. § 1983 applies to J.C. Penney's and Bollinger's conduct, "[t]he essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa,* 557 F.3d 564, 571 (8th Cir. 2009) (*citing DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir. 1999)). J.C. Penney and Bollinger argue that

the allegations which Plaintiffs make against them do not rise to the level of state action for purposes of 42 U.S.C. § 1983. (ECF 31 at 7).

Indeed, Plaintiffs allege that Bollman, with a person who was "a notary and record keeper for Farmington PD," created a false affidavit. (ECF 23 at 7). Plaintiffs, however, do not allege that J.C. Penney played any role in the creation of the affidavit. As such, Plaintiffs have failed to plead the essential elements of a § 1983 claim in regard to J.C. Penney.

Even assuming, arguendo, that Plaintiffs sufficiently allege that Bollman was acting under color of State law because she acted with the notary/record keeper, the Court finds Plaintiffs have failed to specify the constitutionally protected right of which they were deprived as a result of Bollman's conduct in regard to the affidavit. Although Plaintiffs suggest, without explanation, that various Constitutional Amendments were violated, these general allegations are too vague and ambiguous to meet the pleading requirements of Fed. R. Civ. P. 8(d)(1). *See Ashcroft,* 556 U.S. at 678; *Stone,* 364 F.3d at 914. Significantly, there is no constitutionally protected right to be free from prosecution for a crime for which one is found guilty. The Court finds, therefore, that Plaintiffs have failed to establish that 42 U.S.C. § 1983 excuses the requirement of success in the underlying criminal action for a claim of malicious prosecution. The Court further finds, to the extent Plaintiffs' allege that Defendants J.C. Penney and Bollinger

violated 42 U.S.C. § 1983, that the First Amended Complaint fails to sufficiently allege such a violation, and that, therefore, any claim Plaintiffs make that Defendants J.C. Penny and/or Bollman violated 42 U.S.C. § 1983 should be dismissed. *See Ashcroft,* 556 U.S. at 678; *Stone,* 364 F.3d at 914.

As for Plaintiffs' assertion that 42 U.S.C. § 1985 applies to their claims against Defendants J.C. Penney and Bollman, and that somehow that statute makes it irrelevant to Plaintiffs' claim for malicious prosecution that Robin Mecey was unsuccessful in her underlying prosecution, 42 U.S.C. § 1985 creates a cause of action for a "conspiracy to interfere with civil rights." Specifically, 42 U.S.C. § 1985(3) provides that in order to establish a civil rights conspiracy claim:

> the [plaintiff] must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States."

*Davis v. Jefferson Hosp. Ass'n,* 685 F.3d 675, 684 (8th Cir. 2012) (*quoting* 42 U.S.C. § 1985(3)).

Not only does 42 U.S.C. § 1985 require that a plaintiff allege "class-based invidiously discriminatory animus," but it also requires that the plaintiff "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Davis,* 685 F.3d at 684-85.

Defendants J.C. Penney and Bollman argue that Plaintiffs' claim pursuant to 42 U.S.C. § 1985 relies on conclusory allegations of conspiracy, rather than alleging specific facts to show a "meeting of the minds." (ECF 31 at 7). Liberally construing Plaintiffs' First Amended Complaint, the Court agrees and finds that the First Amended Complaint does not allege either class-based invidious discriminatory animus on the part of J.C. Penney and/or Bollman or that J.C. Penney and Bollman reached an agreement with each other or with anyone else in regard to the prosecution of Robin Mecey. *See Davis,* 685 F.3d at 684-85.

The Court finds, therefore, Plaintiffs have failed to establish that 42 U.S.C. § 1985 excuses the requirement of success in the underlying criminal action for proof of malicious prosecution. The Court further finds, to the extent the First Amended Complaint alleges that J.C. Penney and Bollinger violated 42 U.S.C. § 1985, that such a claim should be dismissed.

In conclusion, the Court finds that Plaintiffs have failed to state a cause of action against Defendants J.C. Penney and Bollman for the malicious prosecution of Plaintiff Robin Mecey, *see Stafford,* 582 S.W.2d at 675, and for violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and that all the arguments Plaintiffs make to the contrary are without merit. As such, the Court finds that Plaintiffs' claims against Defendants J.C. Penney and Bollman for malicious prosecution and violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985 should be dismissed.

## C.  Plaintiff David Mecey's Injuries:

As stated above, Defendants J.C. Penney and Bollman contend that Plaintiffs have failed to allege that Plaintiff David Mecey suffered any injuries as a result of conduct on the part of Defendants J.C. Penney and Bollman, and that, therefore, all claims of David Mecey should be dismissed from the First Amended Complaint.

In their Response to the pending Motion, Plaintiffs state that the First Amended Complaint does allege that David Mecey suffered injury as a result of the conduct of Defendants J.C. Penney and Bollman in that "he was directly affected as a victim of the[ir] fraudulent acts," "not only as a spouse but [by] 3 years of fraudulent litigation time and expense on top of the duress and anguish [resulting from] the acts of the Defendants including Victoria Bollman and J.C. Penney."  (ECF 30, ¶ 3).

Defendants J.C. Penney and Bollman reply that David Mecey "simply claims he is the victim of constitutional violations and tort without identifying any legally protected interest of his that has been violated," and that David Mecey does not have "standing" to bring claims against Defendants J.C. Penney and Bollman based on his status as Robin Mecey's spouse.  (ECF 31 at 4).  The Court has found, above, that all claims Plaintiffs make against J.C. Defendants Penney and Bollman should be dismissed.  The Court will, however, alternatively consider whether

David Mecey should be dismissed from this action because Plaintiffs have not alleged that he suffered any injuries.

Article III of United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). For an action brought in federal court to qualify as a case or controversy, "the party seeking to invoke federal jurisdiction has the burden of establishing" "an injury in fact."[4] *Id.* at 560-61 (internal quotation marks and citations omitted). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). To withstand a motion to dismiss based on the allegations of the complaint regarding a plaintiff's injuries, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561 (internal quotation marks and citations omitted). Nonetheless, a plaintiff must allege an injury which "actually exist[s]"; the injury must be "'real' and not 'abstract.'" *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1548 (2016). Notably, a "bare procedural violation" does not suffice to meet the "injury in fact requirement." *Id.* at 1549.

---

[4] Second, to meet the case and controversy requirement there must also "be a causal connection between the injury and the conduct complained of . . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife,* 505 U.S. 555, 560-61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 41-43 (1976)).

Giving Plaintiffs' First Amended Complaint a most liberal construction, the Court finds that the First Amended Complaint fails to allege that David Mecey suffered an invasion of a legally protected interest; the First Amended Complaint does not allege that David Mecey was the victim of J.C. Penney's or Bollman's alleged false imprisonment, malicious prosecution, assault, and giving a false statement to the police. Moreover, according to the First Amended Complaint, the only damages David Mecey suffered as a result of J.C. Penney's and Bollman's conduct were expenses incurred as a result of the *successful* prosecution of his wife. The Court finds, therefore, that the First Amended Complaint fails to allege that David Mecey suffered "an injury in fact" as a result of any wrongful conduct of either Defendant J.C. Penney or Defendant Bollman. *See Lujan,* 505 U.S. at 559-61. As such, the Court, alternatively, finds that all claims made by David Mecey in the First Amended Complaint should be dismissed.

## CONCLUSION

For the reasons stated above and liberally construing Plaintiffs' Complaint and First Amended Complaint, the Court finds that Plaintiffs' claims against Defendants J.C. Penney and Bollman for false imprisonment, malicious prosecution, assault, and giving a false statement to police are barred by the statute of limitations, and that, therefore, the First Amended Complaint should be dismissed in regard to these claims. The Court further finds that Plaintiffs' First

Amended Complaint fails to state a cause of action against Defendants J.C. Penney and Bollman for malicious prosecution, a contract violation, fraud, and violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and that, therefore, the First Amended Complaint should be dismissed in regard to all claims against Defendants J.C. Penney and Bollman. *See Twombly,* 550 U.S. at 555; *Stone*, 364 F.3d at 914. Finally, the Court, alternatively, finds that Plaintiffs have failed to allege that David Mecey suffered an injury in fact, and that, therefore, all claims alleged on his behalf against Defendants J.C. Penney and Bollman should be dismissed. *See Lujan,* 505 U.S. 559-60.

Because the Court has found that all claims against Defendants J.C. Penney and Bollman should be dismissed, the Court need not consider the alternative arguments of Defendants J.C. Penney and Bollman that the Court should order Plaintiffs to provide a more definite statement or that it should strike Plaintiffs' First Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant J.C. Penney Corporation, Inc., and Victoria Bollman's Motion to Dismiss, For More Definite Statement and/or to Strike Plaintiffs' First Amended Complaint (ECF 25) is **GRANTED,** as to the Motion to Dismiss; and

**IT IS FURTHER ORDERED** that all claims against Defendants J.C. Penney and Victoria Bollman in Plaintiffs' First Amended Complaint (ECF 23) are **DISMISSED,** and that Defendants J.C. Penney and Victoria Bollman are terminated as Defendants in this case.

Dated this 22nd Day of November 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE