## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBIN MECEY and** | ) | |
| **DAVID MECEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:17CV1653JCH** |
| | ) | |
| **CITY OF FARMINGTON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant Edward Pultz's Motion to Dismiss, or in the Alternative, For More Definite Statement and To Strike Plaintiffs' First Amended Complaint. (ECF 27). The matter is fully briefed and ready for disposition.

## FACTUAL BAGROUND

Plaintiffs Robin Mecey and David Mecey filed their pro se Complaint on June 12, 2017. (ECF 1). Defendant J.C. Penny Corporation, Inc., (J.C. Penny) and Defendant Victoria Bollman (Bollman) each filed a Motion to Dismiss, For More Definite Statement and/or to Strike (ECF 10; ECF 17) and Defendant Edward Pultz (Judge Pultz) filed a Motion to Dismiss, or in the Alternative, for More Definite Statement and to Strike (ECF 18).

Prior to ruling on the aforementioned Motions, the Court granted Plaintiffs leave to file an amended complaint. (ECF 22). On September 1, 2017, Plaintiffs

filed a First Amended Complaint. (ECF 23). As relevant to the Motion under consideration, in its first paragraph, titled "Jurisdictional Statement," the fourteen page First Amended Complaint states that Plaintiffs are bringing their claims against "a municipality, it's [sic] officers and individuals acting under color of law" and that they are challenging "the constitutionality of their acts." (ECF 23, ¶ 1). In its fourth paragraph, the First Amended Complaint states that "[a]t all times," Judge Pultz was acting as a State official, as he was "employed, compensated, enriched and rewarded by the state," and that he was being sued in his official capacity and in his individual capacity. (ECF 23, ¶ 4).

In a fifth paragraph, titled "Nature of the Case," Plaintiffs state that Loss Prevention Agent Summer Taylor was sent to the J.C. Penny store in Farmington, Missouri, where Robin Mecey worked, and that Taylor was to investigate alleged shortages in cash registers throughout the store. This paragraph further states that "Robin Mecey was singled out with no probable cause," "lured into the back room of the store under false pretenses," and "held against her will for over 2 hour[s] being forced to write a confession for the loss prevention agent concerning events she knew nothing about as a condition of her release." The fifth paragraph also states that Robin Mecey "witnessed the [loss prevention agent] and her coworker fabricate evidence to make up their story." (ECF 23, ¶ 5).

In a sixth paragraph, under a heading titled "Causes of [A]ction," Plaintiffs' First Amended Complaint states that, on March 24, 2014, after Robin Mecey "was lured from her work station under false pretenses into a back room of the store . . . where loss prevention agent Summer Taylor . . . was waiting, Robin Mecey was then held and terrorized for over 2 hours . . . against her will." This paragraph continues to state Robin Mecey "was then forced to participate . . . in falsifying evidence, fabricating a story, falsifying amounts of shortages and making up circumstances to write on the confession, in order for [] Taylor . . . 'to close th[e] investigation so she could get home'"; that "Robin Mecey was then coerced into writing and signing [a] fabricated confession as a promise and condition of her release"; and that "Robin Mecey was never accused or suspected of having anything on her person or within her belongings that belonged to [] J.C. Penny [] before or during the detention to justify the restraint." (ECF 23, ¶ 6).

In the seventh paragraph of the First Amended Complaint, Plaintiffs state that, on March 24, 2014, Robin Mecey was released to the custody of the Farmington Police Department; that she was charged with misdemeanors, "without a warrant, without probable cause, without exigent circumstances that involved her and without any recovered items that belonged to J.C. Penny upon her person or within her possessions"; and that she was imprisoned "at the St. Francois County Jail in violation of [the] 4th, 5th and 14th Amendments." (ECF 23, ¶ 7).

Further, as relevant to the Motion under consideration, in paragraph eleven, Plaintiffs' First Amended Complaint states that the "City of Farmington has a conflict of interest and unfair practices in their Judicial process," and that Robin Mecey was accused, prosecuted, tried, and had to attempt her appeal all thru one person." (ECF 23, ¶ 11).

Paragraph twelve of the First Amended Complaint describes what allegedly took place during her July 24, 2014 trial and states:

> To illustrate the judicial atmosphere in the court room of Judge Edward Pultz at the Farmington municipal court, municipal court Clerk Susie Miller was allowed by Judge Pultz to raise her hands above her head with her hands claps together moving side to side and cheer out loud "Yeah" as if she was at a boxing match as the judge introduces the city prosecutor Kevin Karraker to the room of defendants. It was also noted and witnessed that before Robin Mecey's trial . . . that [the] prosecutor [ ] spoke out loud to officer Ryan Miller just before trial asking him what he knew of the next case? Had he spoken with defendant Robin Mecey? Officer Ryan openly admitted that he had never spoke to Robin Mecey at all about the events that happened at J.C. Penney on 03/24/2014 and only knew what LPA Summer Taylor had told him. It was then witness [sic] that [the] prosecutor [ ] while rolling his eyes upward making an extreme facial expression replied that's really ashame [sic]. Office[r] Ryan Miller went on to testify afterward that Robin Mecey made an excited utterance in the car on the 5 minute trip to the jail, this remark was the only thing Robin Mecey was found guilty on beside one other perjured statement . . . that made no sense. In *State v. Eaton* (Mo.), 280 S.W.2d 63, this act alone is a violation of Robin Mecey's right to 5th and 14th amendment due process, that individual was convicted by perjured testimony knowingly procured by the prosecution, stated facts showing denial of due process.

(ECF 23, ¶ 12).

Paragraph thirteen states as follows:

07/24/2014 Farmington Municipal Court Judge Edward Pultz is accused of acting with no jurisdiction in a trial on 07/24/2014 acting on case numbers 7392, 7393, 7394,

a. Overruling all of Robin's Mecey's objections to faulty informations, faulty affidavit and objections citing an active arbitration agreement which excluded court proceedings.

b. All discovery request made by Robin Mecey were denied as Judge Pultz simply ignored J.C. Penney's non compliance with subpoena's and summonses. J.C. Penney refused in writing to make Summer Taylor available nor would they comply with the subpoenas and all request for records.

c. Furthermore Robin Mecey was denied counsel during the trial and denied her notes and records while trying to defend pro se.

d. Pro se Robin Mecey was denied her notes during testimony, while Officer Ryan was allowed to testify by reading his notes. Prosecution wittiness [sic] Marie Jirik was allowed to read Robin Mecey's affidavit on the events of 03/24/2014 moments before she testified when in an act of bad faith the prosecutor who was given a copy of the document in good faith upon a motion to enter, rushed over and gave his copy to Marie Jirik to read moments before she testified.

e. Despite Robin Mecey denying the charges and the fact that no missing money had been reported and that the 2 people testifying against Robin Mecey had no first had knowledge of any of the alleged events Robin Mecey was being accused of *she was found guilty on all charges*.

f. The evidence consisting of Ryan Miller[']s testimony of excited utterance something he failed to mention on any of his reports and he had openly denied and upon the testimony of Marie Jirik who testified she had not work any of the days in question but somehow saw Robin Mecey commit the 3 acts on 3 separate dates.

(ECF 23, ¶ 13) (emphasis added).

Paragraph seventeen states that on March 24, 2015, Robin Mecey "had a hearing scheduled in her trial Denovo," but was informed "that her case had been dismissed by the judge without cause or reason." (ECF 23, ¶ 17).

The First Amended Complaint further alleges that on March 24 and 25, 2014, "Robin Mecey and David Mecey were both separately refused to file complaints concerning the kidnapping, assault and false arrest of Robin Mecey that had taken place at the J.C. Penney store" (ECF 23, ¶¶ 8-9); that, on March 24, 2015, David Mecey made contact with the City of Farmington Administrator to complain to the Farmington Police Department regarding the conduct of Judge Pultz and others (ECF 23, ¶ 19); that between the dates of "07/25/2014 thru 08/01/2014 Robin Mecey attempted several time to pay the fees and file her own perfected applications for Trial De-novo and was refused by Teresa Bohn acting in place of municipal court clerk Susie Miller on 07/31 who once again turned Robin Mecey away" (ECF 23, ¶ 14); that, in February 2015, persons other than Judge Pultz entered into a conspiracy "to commit judicial fraud to get Robin Mecey's Trial Denovo dismissed" (ECF 23, ¶ 16); that on March 24, 2015, Robin Mecey "had a hearing scheduled in her trial Denovo" (ECF 23, ¶ 17); that her cause of action was not "called for hearing or allowed in the court room but was informed by the court bailiff . . . that her case had been dismissed by the judge without cause

or reason" (ECF 23, ¶ 17); that "Robin Mecey was denied access to the court room or to be involved in that decision" regarding her "trial Denovo" (ECF 23, ¶ 17); and that Judge Pultz ordered Robin Mecey "to pay fines and court costs of over $1,500.00 for the original bench trial despite the facts the City of Farmington had denied Plaintiff her right to a trial denovo and caused Plaintiff over 24 month[s] of monetary damage pain and suffering and damage to [her] reputation in the community" (ECF 23, ¶ 23).

Plaintiffs allege that Robin Mecey's trial was held on July 24, 2014, and that, in August 2016, Judge Pultz ordered Robin Mecey to pay fines and court costs of over $1,500.00 for her original bench trial, "despite the facts the City of Farmington had denied Plaintiff her right to a trial denovo and caused Plaintiff over 24 month[s] of monetary damages pain and suffering and damage to reputation in the community." ECF 23, ¶¶ 11, 23).

As for "Damages," Plaintiffs state that they "suffered expenses of over 36 month[s] of judicial abuse with over 1500 miles traveled and the time to respond pro se with dozens of motions answers and briefs"; that Robin Mecey has suffered "mental anguish," "IBS," and nightmares and that her "standing in the community has been damaged beyond repair" from the aforementioned events; that Robin Mecey "has had her[] 4th 5th 6th 8th and 14th amendment[] [rights] violated multiple times by the actions of the defendants and has been criminally violated";

and that Robin Mecey had to pay a fine and court costs for the "De Novo trial that she was denied." (ECF 23, ¶ 25). For "Relief," Plaintiffs seek "to get the conflicting policies and the malice for rule of law in the acts of the City of Farmington in treating complainants as adversaries changed," plus "damages for time, co[]st and reputation," including a refund for fines and fees paid to the Farmington Municipal Court. (ECF 23, ¶ 26).

In support of his Motion to Dismiss, Judge Pultz argues that Plaintiffs' allegations against him arise exclusively from his rulings as the judge in Robin Mecey's bench trial, which trial resulted in her conviction on July 24, 2014; that "[j]udges are completely immune from civil lawsuits based on claims of misconduct during the performance of their judicial duties"; that "[t]his immunity applies to claims brought under 42 U.S.C. §§ 1983 and 1985" (citing *Robinson v. Freeze,* 15 F.3d 107, 108 (8th Cir. 1994) (absolute immunity applies to Section 1983 claims); *Snelling v. Westhoff,* 972 F.2d 199, 200 (8th Cir. 1992) (per curiam) (judicial immunity applies to § 1985 claims); and that, therefore, all claims Plaintiffs make against Judge Pultz should be dismissed. (ECF 27, ¶¶ 3, 5-7). Judge Pultz also argues that the court should decline to hear Plaintiffs' claims "under that *Rooker-Feldman* doctrine, which precludes a federal district court from adjudicating claims that in effect constitute[] a challenge to a state court decision." (ECF 27, ¶ 8) (internal quotation marks and citation omitted). Judge Pultz further

argues that David Mecey should be dismissed as a Plaintiff because he makes no substantive allegations against Judge Pultz or any of the Defendants which give rise to a cause or action or any claimed damages.  (ECF 27, ¶¶ 14-15).

Alternatively, Judge Pultz argues that Plaintiffs' First Amended Complaint fails to comply with the Federal Rules of Civil Procedure in numerous ways, and that, therefore, if the Court does not grant his Motion to Dismiss, the Court should order Plaintiffs to file a second amended complaint that complies with the Rules. (ECF 27, ¶¶ 9-13).

In their Response, Plaintiffs state that their First Amended Complaint "adds many new details concerning Edward Pultz's Negligence in his Administrative Capacity that had direct consequences on Plaintiffs Right to Due Process and policies of Edward Pultz and his Court that had Direct Effects, Causing Plaintiffs Causes of Actions and denying Plaintiff Robin Mecey her right [to] due process and equal protection."  (ECF 37 at 2).  Plaintiffs further state that their First Amended Complaint "almost exclusively concern[s]" Judge Pultz in his "Administrative Capacity and his duties to make policies concerning the Judicial processes dealing with the public in a manor [sic] that maintains a just and fair process," and that "Plaintiffs' allegations against [Judge] Pultz continue to arise exclusively from his rulings as Judge in a bench trial."  (ECF 37 at 2).

Plaintiffs further state, in their Response, that they allege that the court clerk conspired with Judge Pultz, when the court clerk denied Plaintiffs' application "for trial De-Novo"; that Judge Pultz has the authority to "make and adopt such rules of practice and procedure as are necessary"; that Judge Pultz "allowed police/Teresa Bohn [a notary] to fill out false information against [Robin Mecey] in a false affidavit"; that Judge Pultz's conduct in the courtroom was inconsistent with the Code of Judicial Conduct; and that a judge does not have judicial immunity "[w]hen [he] knows that he lacks jurisdiction, or acts in the face of clearly valid statues expressly depriving him of jurisdiction." (ECF 37 at 3-6). Notably, Plaintiffs state that "judges are immune from suit for judicial acts within or in excess of their jurisdiction even if those acts have been done maliciously or corruptly; the only exception being for acts done in the clear absence of all jurisdiction." (ECF 37 at 6). Plaintiffs state that "it is the main topic of policy plaintiff Robin Mecey being refuse[d] the right to file for Trial denovo," and that officers along with the county prosecutor conspired "to fraud the court and deprive [] Robin Mecey of due process and are indeed the very heart of what title 42 1983 and 1985 are about." (ECF 37 at 9). Plaintiffs assert that Judge Pultz "had no jurisdiction." (ECF 37 at 6). As for the *Rooker-Feldman* Doctrine, Plaintiffs simply deny that it is applicable. (ECF 37 at 7). As for Judge Pultz's argument that David Mecey should be dismissed as a plaintiff because he did not suffer any

injuries, Plaintiffs argue that David Mecey "suffered a false arrest" by Judge Pultz. (ECF 37 at 2).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations are to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Federal Rule of Civil Procedure 10(b) provides that in his or her complaint:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

When a claim is so "vague or ambiguous that [a] party cannot reasonably prepare a response" a party can move for a more definite statement. Fed. R. Civ. P. 12(e). Also, a court may strike, either pursuant to the motion of a party or on its own, "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Fed. R. Civ. P. 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show that "'the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (*quoting*

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  *See also Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Twombly,* 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft,* 556 U.S. at 679 (*citing Twombly,* 550 U.S. at 556).  The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 555).

Further, in regard to a Rule 12(b)(6) Motion, the Supreme Court holds:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure ' 1216, pp. 235-236 (3d ed. 2004).

*Twombly,* 550 U.S. at 555.  *See also Gregory v. Dillard=s, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) ("[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that

are merely consistent with such a right.'") (*quoting Stalley v. Catholic Health Initiative,* 509 F.3d 517, 521 (8th Cir. 2007)).

Additionally, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556 (citation omitted). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his or her] claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*abrogated on other grounds, Horlow v. Fitzgerald,* 457 U.S. 800 (1982)).

A pro se complaint should be liberally construed. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *See also Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995) (holding that in civil rights actions a complaint should be liberally construed when determining whether it has stated a cause of action sufficient to survive a motion to dismiss). The complaint must, however, "still allege sufficient facts to support the claims advanced." *Stone,* 364 F.3d at 914 (*citing Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded."); *Cunningham v. Ray,* 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). With these principles in mind, the Court

will consider Judge Pultz's Motion to Dismiss, or in the Alternative, For More Definite Statement and To Strike Plaintiffs' First Amended Complaint.

## DISCUSSION

### A. Judicial Immunity:

As held by the Eighth Circuit, "[t]he doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Robinson v. Freeze,* 15 F.3d 107, 108 (8th Cir. 1994) (*quoting Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429 (1993)). The doctrine of judicial immunity extends to municipal judges, such as Judge Pultz. *See e.g., Duty v. City of Springdale,* 42 F.3d 460, 463 (8th Cir. 1994) (judicial immunity barred suit against municipal judge).

Presiding over a trial and rendering a sentence is clearly a judicial function. *Cf. Forrester v. White,* 484 U.S. 219, 227 (1988) ("When applied to the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court, the doctrine of absolute judicial immunity has not been particularly controversial."). On the other hand, "administrative, legislative, or executive functions" which a judge may occasionally perform are not judicial acts. *Id.* Despite Plaintiffs' broad and conclusory assertions, in their Response, that their cause of action against Judge Pultz stems from his

administrative duties and his establishing policy for the City of Farmington, liberally construing Plaintiff's pro se First Amended Complaint, Plaintiffs' claims against Judge Pultz are related to, and arise exclusively from, his presiding over Robin Mecey's July 2014 bench trial, including his making rulings during the trial, his finding Robin Mecey guilty of the charges against her, and his ordering Robin Mecey to pay fines and court costs. Notably, Plaintiffs allege that Judge Pultz violated Robin Mecey and/or David Mecey's constitutional rights by overruling Robin Mecey's objections at trial, denying her discovery requests, denying her counsel and her request to use notes, accepting as true the testimony against Robin Mecey, and, ultimately, finding Robin Mecey guilty of the charges against her and denying her a "trial de novo." Thus, to the extent Plaintiffs suggest that their allegations against Judge Pultz do not arise from his performing judicial functions, they are mistaken; Judge Pultz was clearly performing judicial functions when he engaged in the conduct which is the subject of the allegations against him in Plaintiffs' First Amended Complaint.

The Supreme Court held, in *Mireles v. Waco,* 502 U.S. 9, 11-12 (1991) (per curiam):

> [J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray,* 386 U.S., at 554, 87

S.Ct., at 1218 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). *See also Harlow v. Fitzgerald,* 457 U.S. 800, 815-819, 102 S.Ct. 2727, 2736-2739, 73 L.Ed.2d 396 (1982) (allegations of malice are insufficient to overcome qualified immunity).

Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. *Forrester v. White,* 484 U.S., at 227-229, 108 S.Ct., at 544-545; *Stump v. Sparkman,* 435 U.S., at 360, 98 S.Ct., at 1106. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.,* at 356-357, 98 S.Ct., at 1104-1105; *Bradley v. Fisher,* 13 Wall., at 351.

As further explained in *Billingsley v. Kyser,* 691 F.2d 388, 389 (8th Cir. 1982), "there is a distinction between acts done in excess of jurisdiction, in which case judicial immunity still applies, and acts done in complete absence of subject-matter jurisdiction, in which case a judge may be deprived of judicial immunity. A judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances." (internal citations and quotation marks excluded).

Judicial immunity extends to actions taken in error, done maliciously, or performed in excess of jurisdiction. *See e.g., Duty v. City of Springdale,* 42 F.3d 460, 463 (8th Cir. 1994) (judicial immunity barred suit against municipal judge who issued arrest warrant even if court lacked jurisdiction to do so); *Billingsley,* 691 F.2d at 389 (judicial immunity barred suit against state judge whose amendment of plaintiffs sentence, without jurisdiction, deprived plaintiff of right to

appeal his conviction); *White v. Bloom,* 621 F.2d 276, 280 (8th Cir. 1980) (judicial immunity barred suit against state court judge who allegedly conspired with prosecutor to empanel an all-white jury after ordering African-American criminal defendant removed from courtroom even if judge's actions were "taken in error" or "done maliciously"). Thus, to the extent Plaintiffs' First Amended Complaint alleges that Judge Pultz acted in error or maliciously when performing judicial functions, or that his actions were performed in excess of his jurisdiction, such allegations do not change the nature of Judge Pultz's conduct from judicial to non-judicial and do not overcome his judicial immunity. *Forrester,* 484 U.S. at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive").

In particular, in regard to Plaintiffs' contention that Judge Pultz acted without jurisdiction when he engaged in the conduct which is the subject of the First Amended Complaint, Missouri municipal courts have subject matter jurisdiction to hear and determine alleged violations of municipal ordinances. *See* Mo. Rev. Stat. § 478.230 (municipal judges may hear and determine municipal ordinance violations); *J.C.W. and T.D.W. v. Wyciskalla,* 275 S.W.3d 249, 253-54 (Mo 2009) ("Subject matter jurisdiction, in contrast to personal jurisdiction, is not a matter of a state court's power over a person, but the court's authority to render a judgment in a particular category of case.") (citing Mo. Const., art. V, § 14). As a

municipal judge in the Municipal Court of St. Francois County, Missouri, Judge Pultz, therefore, had authority, pursuant to the Missouri Constitution, to preside over Robin Mecey's bench trial. The Court finds, therefore, that Judge Pultz was acting within his jurisdiction while presiding over Robin Mecey's bench trial, making rulings at her trial, finding her guilty, and assessing her costs and a fine. Likewise, to the extent Plaintiffs allege Judge Pultz denied Robin Mecey a "trial de novo," Judge Pultz was acting within his jurisdiction as a municipal judge.

A cause of action claiming a defendant, acting under color of state law, violated a plaintiff's constitutional rights is brought pursuant to 42 U.S.C. § 1983, and a cause of action claiming a defendant entered into a conspiracy to deprive a plaintiff of his or her constitutional rights is brought pursuant to 42 U.S.C. § 1985. Notably, "[j]udges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson,* 15 F.3d at 108. Likewise, absolute immunity applies to § 1985 claims. *Snelling,* 972 F.3d at 200. As such, to the extent Plaintiffs allege Judge Pultz violated 42 U.S. C. § 1983 and/or 42 U.S. C. § 1985, or otherwise violated Robin Mecey's and/or David Mecey's constitutional rights, the Court finds that Judge Pultz is entitled to judicial immunity. Additionally, to the extent Plaintiffs allege negligence on the part of Judge Pultz (ECF 37 at 2), judicial immunity applies to claims brought under Missouri State law. *White v. Camden Cnty. Sheriffs Dep't,* 106 S.W.3d 626, 633 (Mo. App. Ct. 2003) (Missouri has

adopted judicial immunity as recognized by the U.S. Supreme Court); *State ex re. Raack v. Kohn,* 720 S.W.2d 941, 944 (Mo 1986) (en banc).

Because Judge Pultz was performing judicial functions and was acting within his jurisdiction when he engaged in the conduct which is the subject of the allegations against him in Plaintiffs' First Amended Complaint, the Court finds that Judge Pultz is entitled to judicial immunity and that, therefore all allegations which Plaintiffs make against Judge Pultz in the First Amended Complaint should be dismissed. Because Judge Pultz has judicial immunity in regard to the acts for which Plaintiffs allege he is liable, the court further finds that Plaintiffs' First Amended Complaint fails to state a plausible claim for relief against Judge Pultz. *See Twombly,* 550 U.S. at 555. As such, the Court finds that all claims against Judge Pultz in Plaintiffs' First Amended Complaint against Judge Pultz should be dismissed.

## B. Rooker-Feldman Doctrine:

The Court will alternatively consider Judge Pultz's argument that the Court should decline to consider Plaintiffs' claims against him pursuant to the *Rooker-Feldman* Doctrine because their claims, in effect, ask the Court to re-adjudicate the judgment against Robin Mecey. (ECF 28 at 7).

The *Rooker-Feldman* Doctrine provides that federal courts do not have jurisdiction over "cases brought by state-court losers complaining of injuries

caused by state-court" judgments rendered before the federal district court proceedings commenced and inviting the district court to review and reject those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284-88 (2005). The Court agrees with Judge Pultz and finds that, were the Court to consider Plaintiffs' claims against Judge Pultz, it would be forced to re-adjudicate the charges against Robin Mecey; that Plaintiffs are barred from re-adjudicating the validity of Robin Mecey's conviction; and that, therefore, the Court is precluded from considering Plaintiffs' complaints of injuries they allegedly suffered as a result of Robin Mecey's July 2014 conviction.

## C. Plaintiff David Mecey's Injuries:

Judge Pultz contends that David Mecey should be dismissed as a Plaintiff in this matter because Plaintiffs have made no substantive claims on his behalf and because he suffered no injury in fact. (ECF 27, ¶¶ 14-15; ECF 28 at 11). The Court has found above that all claims Plaintiffs make against Judge Pultz should be dismissed based on Judge Pultz's having judicial immunity and that the Court is precluded from considering Plaintiffs' complaints of injuries they allegedly suffered as a result of Robin Mecey's July 2014 conviction. The Court will, however, consider alternatively, whether David Mecey should be dismissed as a plaintiff in this matter.

Article III of United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). For an action brought in federal court to qualify as a case or controversy, "the party seeking to invoke federal jurisdiction has the burden of establishing" "an injury in fact."[1] *Id.* at 560-61 (internal quotation marks and citations omitted). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). To withstand a motion to dismiss based on the allegations of the complaint regarding a plaintiff's injuries, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561 (internal quotation marks and citations omitted). Nonetheless, a plaintiff must allege an injury which "actually exist[s]"; the injury must be "'real' and not 'abstract.'" *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1548 (2016). Notably, a "bare procedural violation" does not suffice to meet the "injury in fact requirement." *Id.* at 1549.

Although Plaintiffs state in their Response that "David Mecey suffered a false arrest by [Judge Pultz]," the First Amended Complaint does not, in fact, make

---

[1] Second, to meet the case and controversy requirement there must also "be a causal connection between the injury and the conduct complained of . . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife,* 505 U.S. 555, 560-61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 38, 41-43 (1976)).

such an allegation.  (ECF 37 at 2).  To the extent Plaintiffs suggest that David Mecey was denied the right to file for a "trial de novo," the "trial de novo" was for Robin Mecey, not for David Mecey.  (ECF 37 at 4).

Thus, giving Plaintiffs' First Amended Complaint a most liberal construction, the Court finds that the First Amended Complaint fails to allege that David Mecey suffered an invasion of a legally protected interest.  According to the First Amended Complaint, moreover, the only damages David Mecey suffered as a result of Judge Pultz's conduct were expenses and inconveniences incurred as a result of the *successful* prosecution of his wife.  *Cf. Stafford v. Muster,* 582 S.W.2d 670, 675 (Mo. 1979) (en banc) (termination of the proceedings in favor of the plaintiff is a condition precedent to a cause of action for malicious prosecution). The Court finds, therefore, that the First Amended Complaint fails to allege that David Mecey suffered "an injury in fact" as a result of any wrongful conduct on the part of Judge Pultz.  *See Lujan,* 505 U.S. at 559-61.  As such, the Court, alternatively, finds that any and all claims made by David Mecey in the First Amended Complaint against Judge Pultz should be dismissed.

## CONCLUSION

For the reasons stated above, the Court finds that all claims Plaintiffs make against Judge Pultz in the First Amended Complaint should be dismissed.  Because the Court has found that all claims against Judge Pultz should be dismissed, the

Court need not consider Judge Pultz's alternative arguments that the Court should order Plaintiffs to provide a more definite statement or that it should strike Plaintiffs' First Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Edward Pultz's Motion to Dismiss, or in the Alternative, For More Definite Statement and To Strike Plaintiffs' First Amended Complaint (ECF 27) is **GRANTED,** as to the Motion to Dismiss; and

**IT IS FURTHER ORDERED** that all claims against Defendant Edward Pultz in Plaintiffs' First Amended Complaint (ECF 23) are **DISMISSED,** and that Defendant Edward Pultz is terminated as a Defendant in this case.

Dated this 30th Day of November 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE